UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LYNN ELLEN GEIGER,<br><br>          Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social Security<br>Administration,<br><br>          Defendant. | CASE NO. 10cv5765-BHS-JRC<br><br>REPORT AND<br>RECOMMENDATION ON<br>PLAINTIFF'S COMPLAINT<br><br>NOTING DATE: October 28, 2011 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261, 271-72 (1976). Plaintiff has filed an Opening Brief in this matter and defendant has filed a Response. (See ECF Nos. 13, 16).

Based on the relevant record, the Court concludes that the Administrative Law Judge did not evaluate properly plaintiff's credibility and testimony or the medical

evidence. Therefore, this matter should be reversed and remanded to the Administration pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

BACKGROUND

Plaintiff, LYNN ELLEN GEIGER, was forty-five years old on her alleged disability onset date of April 1, 2007 (Tr. 125, 128). Plaintiff received an Associate's degree in social sciences in 1999 (Tr. 36). Plaintiff was working from October, 2006 through approximately May, 2007 at a Shell gas station, pumping gas, when she allegedly became disabled (Tr. 36-37). She testified that she left that job because it "was robbed, and after being relocated to –I started – the hours were less. I was a daytime shift, so I was making less  .  .  .  .  I became homeless, and that's when I went into the VA program" (Tr. 37).

Prior to her work pumping gas, plaintiff was assistant manager at a Blockbuster Video store for approximately two years (id.). She was let go over a "policy issue," and plaintiff testified that she thinks that at this time, she started "to become ill" (Tr. 37-38).

Plaintiff has a history of sexual abuse at age four and repeated rapes while in the military (Tr. 59, 325, 1327). She has been diagnosed with post-traumatic stress disorder, and major depressive episode, in remission, among other diagnoses, and was assigned a global assessment of functioning ("GAF") of 50 on April 6, 2007 (Tr. 1177). However, plaintiff's impairment also is explained by a different examining source as a diagnoses of anxiety disorder, not otherwise specified and depressive disorder, not otherwise specified (Tr. 1266).

On April 22, 2008, plaintiff was admitted to an inpatient program for post-traumatic stress disorder from which she was discharged on June 12, 2008 (Tr. 1327). Her GAF was assessed at 41-45 at intake and 45-48 at discharge and her diagnoses included post-traumatic stress disorder, complex and severe; depression; and, dissociative identity disorder, not otherwise specified (id.).

On May 25, 2007, plaintiff sought treatment for pain, stating that she had been suffering joint pain and stiffness for approximately one year (Tr. 245). The examining Nurse Practitioner assessed depression, insomnia and "possible fibromyalgia" (Tr. 247). On June 25, 2007, plaintiff again sought treatment for pain "in several areas but especially knees, shoulders and upper back" (Tr. 232). Dr. Paul Helgason, M.D. diagnosed plaintiff with fibromyalgia (Tr. 233). Plaintiff was evaluated and examined in the rheumatology clinic on August 6, 2007 for "pain in all joints and flesh, in pain all over body" (Tr. 415-18). The rheumatologist noted "diffuse classic trigger points" and assessed plaintiff as having "diffuse pain, sleep apnea, mental health issues (depression, PTSD, anxiety), [and] trigger points, [consistent with] fibromyalgia" (Tr. 417).

PROCEDURAL HISTORY

Plaintiff filed applications for Social Security Disability and Supplemental Security Income benefits on August 9, 2007 (Tr. 125-30). Plaintiff's claims were denied initially and following reconsideration (Tr. 74-87). Her requested hearing was held on January 7, 2010 before Administrative Law Judge Catherine R. Lazuran ("the ALJ") (Tr. 31-73).

On April 27, 2010, the ALJ issued a written decision in which she found that plaintiff had "not been under a disability, as defined in the Social Security Act, from April 1, 2007, through the date of this decision" (Tr. 15 -25). On August 24, 2010, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-5). <u>See</u> 20 C.F.R. § 404.981.

On October 19, 2010, plaintiff filed a complaint seeking judicial review of the ALJ's written decision (<u>see</u> ECF No. 1). In her Opening Brief, plaintiff contends that the ALJ erred by: (1) failing to identify all of plaintiff's severe impairments (ECF No. 13, pp. 14-16); (2) failing to follow the treating physician rule (<u>id.</u>, pp. 16-19); (3) failing to consider properly the disability rating by the Department of Veterans' Affairs ("VA") (<u>id.</u>, pp. 19-20); (4) failing to evaluate properly plaintiff's testimony and credibility (<u>id.</u>, at pp. 20-23); and, (5) relying on flawed testimony by the vocational expert (<u>id.</u>, at pp. 23-24). For these reasons, plaintiff requests that this matter be reversed and remanded for a direction of an award of benefits (<u>id.</u>, p. 25).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir. 1999); <u>see also</u> <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (quoting Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). The Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (citing Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

However, "regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for h[is] decision and [the courts] confine our review to the reasons supplied by the ALJ." Steele v. Barnhart, 290 F.3d 936, 941(7th Cir. 2002) (citing SEC v.

Chenery Corp., 318 U.S. 80, 93-95 (1943) (other citations omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted); Griemsmann v. Astrue, 147 Soc. Sec. Rep. Service 286, 2009 U.S. Dist. LEXIS 124952 at *9 (W.D. Wash. 2009) (citing Blakes v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion. Stout v. Comm. Soc. Sec., 454 F.3d 1050, 1054-55 (9th Cir. 2006) (reviewing legal errors found to be harmless).

<u>DISCUSSION</u>

1.  The ALJ failed to evaluate properly plaintiff's testimony and credibility.

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999); Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971); (Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (citing 42 U.S.C. § 423(d)(5)(A)). Even if a claimant "has an ailment reasonably expected to produce some pain; many medical conditions produce pain not severe enough to preclude gainful employment." Fair, 885 F.2d at 603. The ALJ may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642 (citing Beane v. Richardson, 457 F.2d 758 (9th Cir. 1972); Wade v. Harris, 509 F. Supp. 19, 20 (N.D. Cal. 1980)).

Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)); Reddick, 157 F.3d at 722 (citations omitted); Smolen, supra, 80 F.3d at 1284 (citations omitted). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Smolen, supra, 80 F.3d at 1284.

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen, 80 F.3d at 1281 (*citing* Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, supra, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing* Cotton, 799 F.2d at 1407). Absent

affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, supra, 80 F.3d at 1283-84; Reddick, 157 F.3d at 722 (*citing* Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996); Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Here, the ALJ did not credit fully plaintiff's testimony because the ALJ inferred that plaintiff was not being entirely honest; characterized plaintiff's medical treatment as conservative; found that plaintiff had a financial disincentive to work; found that plaintiff's activities of daily living were not consistent with her allegations of disability; found a lack of evidence for plaintiff's alleged 90% disability as determined by the Department of Veterans' Affairs ("VA") and, found that plaintiff's allegations of disability were not supported by objective medical evidence (Tr. 21-23).

a. The ALJ improperly inferred that plaintiff's psychological test results indicated dishonesty

The ALJ includes the following in her written decision:

> Psychological evaluations provide information concerning both limitations related to mental health issues and physical functioning. Christopher F. Anderson, Ph.D., who evaluated the claimant on June 8, 2007, explains that low scores on cognitive testing are not an accurate measure of functioning because the claimant exhibited significant inattention and lack of effort (internal citation to Ex. 21F). This psychologist also explains how the nature of the responses validates this conclusion. Dr. Anderson explains that the results of the Personality Assessment Inventory are also invalid because the responses show that the claimant did not answer in an honest manner. He provides the diagnoses of an anxiety disorder not otherwise specified and a depressive disorder not otherwise specified. Psychologist Anderson notes that the numerous psychological stressors and memory difficulties alleged began only when the claimant lost her housing, as the individual who she had cohabitated with for 8 years and who provided the housing, was

> sentenced to jail. He also explained that the testing did not show that there had been any actual decline in cognitive functioning.

(Tr. 21).

The ALJ did not evaluate the cited report correctly. The ALJ begins by stating that "low scores on cognitive testing are not an accurate measure of functioning because the claimant exhibited significant inattention and lack of effort" (Tr. 21). The Court notes several problems with this statement. First, there does not appear to be any suggestion in the cited report that plaintiff was exhibiting a "lack of effort" (see Tr. 1263-68). Second, the report explicitly indicates that "[r]esults of this assessment are considered to be an accurate and valid indicator of Ms. Geiger's current cognitive functioning" (Tr. 1263). Third, the section that the ALJ appears to be referencing is the section on visuospatial construction (see Tr. 1265). Here, plaintiff demonstrated results in the low average range and in the impaired range (id.). Mr. Ross opined that the reason underlying plaintiff's subpar performance on one of the tests was that she suffered from "an overall inattentiveness to visual details and a non-systematic strategy in completing the figure's elements" (Tr. 1265). The Court concludes that the ALJ's apparent interpretation of this statement as support for the conclusion that plaintiff "exhibited significant inattention and lack of effort" was a finding not supported by substantial evidence in the record (see Tr. 21, 1265). In addition, the results of plaintiff's testing, as indicated by this report, actually demonstrate that she suffered from multiple functional cognitive impairments, including impaired attention, concentration and processing speed (see Tr. 1264).

With regard to the Personality Assessment Inventory, the ALJ inferred dishonesty whereas the author of the report inferred that either plaintiff viewed herself extremely negatively or that her "pattern of responding was more of a 'cry for help' than an actual reflection of her psychological functioning" (Tr. 1265). The ALJ must explain why her interpretations are more correct and she did not do so here. See Reddick, supra, 157 F.3d at 725. Furthermore, although the ALJ interpreted the report as indicating that "the testing did not show that there had been any actual decline in cognitive functioning," the report actually indicates that there was evidence of a decline in cognitive functioning, but that instead of said decline resulting from an underlying cognitive disorder, plaintiff's functional impairments were "most likely due to psychological stressors" (Tr. 21, 1266). The fact that plaintiff's functional impairments were triggered or caused by psychological stressors, especially where plaintiff suffers from mental impairments such as anxiety disorder or post traumatic stress disorder, does not provide evidence for the conclusion that the functional impairments do not exist.

Similarly, the ALJ infers that an evaluation by Dr. Anderson indicated "a degree of suspicion as to the credibility of the claimant," however, the ALJ does not cite any opinion of Dr. Anderson to support this conclusion (Tr. 22).

There is a comment in Dr. Anderson's report that states: "Her response profile indicates that she did not answer the questions on the PAI in an honest manner." (Tr. 1265.) This comment, however, is immediately followed with the observations that: "Her response profile suggests that she portrayed herself in an especially negative or pathological manner;. It is possible that Ms. Geiger views herself extremely negatively;

however, the most likely explanation is that her pattern of responding was more a 'cry for help' [rather] than an actual reflection of her psychological functioning." Dr. Anderson does not conclude that plaintiff was dishonest, but rather that her answers reflected the very disability that he was diagnosing – Anxiety Disorder and depressive disorder. (Tr. 1266.)The Court also notes that Dr. Paul Helgason specifically indicated that plaintiff was not a malingerer (Tr. 1334).

For these reasons and based on the relevant record, the Court concludes that the ALJ's inference of dishonesty gleaned from plaintiff's psychological test results was not a finding based on substantial evidence in the record. In addition, based on the reasons discussed and the relevant record, the Court also concludes that the ALJ's evaluation of plaintiff's mental impairments was improper.

b. Plaintiff's "conservative" treatment

The ALJ indicated that plaintiff's medical "treatment has been conservative and is not consistent with a finding of total disability." (Tr. 21). The ALJ does not provide any support for this finding. The ALJ does not cite any evidence that plaintiff declined to comply with any recommended treatment by a physician. Although in some circumstances refusal to comply with recommended treatment can indicate that a claimant is not as impaired as alleged, if an impairment does not lend itself to aggressive treatment, faulting a claimant for not obtaining aggressive treatment is not logical. Cf. Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996) (fibromyalgia's "causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely

subjective"). The record demonstrates that plaintiff has been prescribed many prescriptions for her impairments and symptoms. The record does not provide evidence for a conclusion that she refrained from any recommended treatment that a doctor suggested would help her symptoms (see Tr. 45-46, 58, 592, 784-88, 1219-20). It is entirely consistent with the conclusion that her impairment does not lend itself to more aggressive treatment and would serve no useful purpose.

c. Plaintiff's alleged financial disincentive to work

The ALJ indicated that plaintiff had "a history of inconsistent employment activity even before her alleged onset date" (Tr. 23). However, plaintiff points out that she has worked every year between 1979, when she was eighteen-years old, and 2007, with the exception of one year (Tr. 132-33; see also Opening Brief, ECF No. 13, p. 22). Defendant fails to respond to this argument. Contrary to the ALJ's indication, plaintiff demonstrated consistent employment activity before her alleged onset date (see Tr. 132-33).

The ALJ also relied on plaintiff's receipt of $1,600 per month to conclude that she had a "disincentive to seek work" (Tr. 23). However, plaintiff indicated that she did not begin to receive the $1,600 per month until November, 2009 (see Opening Brief, ECF No. 13, p. 22). Plaintiff argues that she stopped working in April, 2007, and thereafter she spent some of the time homeless. This was before she began receiving $1,600 per month. Plaintiff argues that these facts contradict the ALJ's conclusion that plaintiff was not working because she was receiving money. (See id.). Defendant responds to this argument by stating that plaintiff has offered a different interpretation of the evidence (Response, ECF No. 16, p. 7). The Court concludes that the ALJ's finding that plaintiff

had a disincentive to work does not provide much support for the adverse credibility finding here.

d.  Plaintiff's activities of daily living

Regarding activities of daily living, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities  . . . .  does not in any way detract from her credibility as to her overall disability." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007 (*quoting* Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination:" (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." Orn, 495 F.3d at 639 (*citing* Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. Orn, 495 F.3d at 639 (*quoting* Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)).

The ALJ cited the fact that plaintiff's "activities have included some work, vacuuming, shopping, walks, travel to New York in 2008, going to bingo games, using a computer, doing laundry and taking the bus" (Tr. 23). The ALJ did not make any specific finding that plaintiff's activities of daily living were transferable to a work setting. Therefore, the ALJ was required to demonstrate that plaintiff's activities of daily living

contradicted her other testimony in order to rely on her daily activities as a basis to not credit fully her testimony. See Orn, supra, 495 F.3d at 639.

However, the ALJ does not point to any testimony by plaintiff that was contradicted by her activities of daily living. The ALJ simply indicated that while plaintiff was "alleging disability she has also exhibited abilities to function and is furthering her education" (Tr. 23). The Court concludes that the ALJ did not demonstrate any contradiction between plaintiff's testimony and her activities of daily living. The Court also concludes that plaintiff's activities of daily living do not provide any support for the ALJ's adverse credibility finding here. See Orn, supra, 495 F.3d at 639.

e.   Determination of disability by the VA

The ALJ appeared to discredit plaintiff's credibility on the basis that although plaintiff alleged that she had been rated as 90% disabled by the VA and that she filed for a finding of un-employability, there was no evidence of these allegations by plaintiff (Tr. 23). The record demonstrates that plaintiff's VA disability rating has changed over time (Tr. 197, 201-04). For example, although the VA appears to utilize an "overall or combined rating," the record suggests that plaintiff was considered 100% disabled by the VA at least for a period of time from April 22, 2008 and 90% disabled for a period of time from September 4, 2008 (Tr. 197). Therefore, the record supports at least a temporary disability rating by the VA of 90%. The Court concludes that plaintiff's allegations regarding her disability as determined by the VA do not provide any support for the ALJ's adverse credibility determination.

In addition, the ALJ did not appear to give any weight to the disability rating by the VA (Tr. 23). However, according to the Ninth Circuit, "an ALJ must ordinarily give great weight to a VA determination of disability." McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002) (citations omitted). The Ninth Circuit concluded as such "because of the marked similarity between these two federal disability programs," because the "VA criteria for evaluating disability are very specific and translate easily into SSA's disability framework," and due to other factors. Id. The Court concludes that the ALJ did not consider properly the VA disability rating here. See id.

    f.   Lack of support from objective medical evidence

Finally, the ALJ discredited plaintiff's credibility due to the ALJ's determination that there was a lack of support from the objective medical evidence for plaintiff's allegations of functional limitations (Tr. 21). However, plaintiff's allegations of functional limitations due to her impairments are supported by more than just her subjective reports. For example, plaintiff's treating physician, (Dr. Paul Helgason, M.D. "Dr. Helgason") assigned numerous limitations on plaintiff's ability to function in a work environment, including psychological limitations and limitations on plaintiff's ability to sit; to stand/walk; to engage in repetitive lifting; to reach; to grasp; to carry; to engage in fine manipulations; and, to deal with stress (Tr. 1331-35). As indicated by Dr. Helgason, his assessment was supported by objective medical evidence (see Tr. 1329-30; see also infra, section 2). The objective medical evidence supporting Dr. Helgason's opinion will be discussed further below, see infra, section 2. Instead of crediting Dr. Helgason's

opinion as a treating physician, the ALJ relied on opinions by non-treating medical sources (see Tr. 21; see also Tr. 316-21, 664-71). This factor provides little support for the ALJ's adverse credibility rating.

For these reasons and based on a review of the relevant record, the Court concludes that the ALJ did not evaluate properly plaintiff's credibility and testimony and did not provide clear and convincing reasons to discount her testimony. See Smolen, supra, 80 F.3d at 1283-84.

2. The ALJ failed to evaluate properly the medical evidence

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." Edlund v. Massanari, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (citing SSR 96-2p, 1996 SSR LEXIS 9; see also 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 416.902. However, "[t]he ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In addition, "[a] physician's opinion of disability 'premised to a large extent upon [plaintiff]'s own accounts of h[er] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" Morgan, supra, 169 F.3d at 602 (quoting Fair v. Bowen, 885 F.2d

597, 605 (9th Cir. 1989) (*citing* Brawner v. Sec. HHS, 839 F.2d 432, 433-34 (9th Cir. 1988))).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (*citing* Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725 (*citing* Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." Id. (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

In general, more weight is given to a treating medical source's opinion than to the opinions of those who do not treat the claimant. Lester, supra, 81 F.3d at 830 (*citing* Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). On the other hand, an ALJ need not accept the opinion of a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings or by the record as a whole. Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004)

(*citing* <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001)); <u>see also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, <u>supra</u>, 81 F.3d at 830 (citations omitted); <u>see also</u> 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. <u>Lester</u>, <u>supra</u>, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." <u>Tonapetyan</u>, <u>supra</u>, 242 F.3d at 1149 (*citing* <u>Magallanes</u>, <u>supra</u>, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." <u>Van</u> <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* <u>Lester</u>, <u>supra</u>, 81 F.3d at 831).

The ALJ's evaluation of the opinion of treating physician, Dr. Paul Helgason, M.D. ("Dr. Helgason") was improper. On May 15, 2009, Dr. Helgason indicated that he had been treating plaintiff every two to six months from April 11, 2007 until May 14, 2009 (Tr. 1329). He indicated that plaintiff's relevant impairments of major concern were her low back pain and fibromyalgia (<u>id.</u>). He also indicated that his diagnoses and opinions were supported by clinical findings in plaintiff's June 20, 2008 MRI, "showing degenerative disc disease L5/S1 foraminal stenosis," as well as by the evaluation and examination by a rheumatology specialist and the resulting diagnosis of fibromyalgia (<u>id.</u>; <u>see also</u> Tr. 734-35).

Dr. Helgason indicated that plaintiff's symptoms of joint and muscle pain, as well as her symptoms of low back pain with flares of excruciating pain increasing with prolonged sitting, were reasonably consistent with her impairments (Tr. 1330). Dr. Helgason indicated that he had not been able to completely relieve the pain with medication without unacceptable side effects (id.).

Dr. Helgason opined on plaintiff's residual functional capacity and her functional limitations (id.). He estimated that if plaintiff was placed "in a normal COMPETITIVE FIVE DAY A WEEK WORK ENVIRONMENT ON A SUSTAINED BASIS," that she would be limited to sitting only 3 hours in an eight-hour work day, and to standing/walking zero to one hour in an eight-hour work day (id. (emphasis in original)). Dr. Helgason also opined that it was necessary or medically recommended for plaintiff not to sit continuously in a work setting (id.). He indicated that plaintiff must get up and move around every thirty minutes (id.).

Dr. Helgason indicated that it was necessary or medically recommended for plaintiff not to stand/walk continuously in a work setting (Tr. 1332). He also opined that plaintiff had significant limitations in doing repetitive reaching, handling, fingering or lifting in that her low back pain prevented her from performing repetitive lifting and her shoulder and neck pain prevented her from performing reaching (id.). Dr. Helgason provided specific limitations on plaintiff's lifting and carrying (id.). He specifically indicated that plaintiff suffered the side-effect of fatigue from her clonidine, as well as other side-effects from various medications (Tr. 1333). Dr. Helgason indicated that plaintiff's medications had been substituted in an attempt to produce less

symptomatology or to relieve side effects and also indicated that plaintiff received other treatments, including physical therapy, pain clinic evaluation, use of TENS unit for pain and use of a cane (id.).

Dr. Helgason opined that plaintiff's symptoms likely would increase if she was placed in a competitive work environment and that her condition interfered with her ability to keep her neck in a constant position (id.). He opined specifically that plaintiff could not do a full time competitive job that required activity on a sustained basis (Tr. 1334). Dr. Helgason indicated that plaintiff's pain or other symptoms were severe enough to interfere with her attention and concentration "frequently" (id.). He opined that her impairments would last at least twelve months and that she was not a malingerer (id.).

Dr. Helgason also opined that emotional factors contributed to the severity of plaintiff's symptoms and functional limitations (id.). Specifically, he indicated that she was followed at a mental health clinic for post-traumatic stress disorder, depression and anxiety (id.). The record reflects that these mental impairments resulted, at least in part, from plaintiff's sexual abuse at age four, as well as her being raped more than once while in the military (see Tr. 59, 325). Dr. Helgason indicated that plaintiff was capable of dealing with only low stress (Tr. 1334). He based this assessment on the fact that she suffered from continued difficulty with low stress of daily life even when not working (id.). Dr. Helgason opined that plaintiff would sometimes need to take unscheduled breaks to rest at unpredictable intervals during an eight-hour work day and that this would happen approximately every thirty minutes (id.).

Dr. Helgason indicated that plaintiff had good days and bad days (Tr. 1335). He also opined that she likely would be absent from work as a result of her impairments or treatment more than three times a month (id.). Dr. Helgason indicated numerous other limitations that would affect plaintiff's ability to work at a regular job on a sustained basis, such as psychological limitations and limitations from prolonged sitting, prolonged standing and repetitive reaching (id.). In addition to the low back pain and fibromyalgia, supporting his opinions regarding functional limitations, Dr. Helgason indicated that plaintiff also suffered from the diagnoses of asthma, diabetes mellitus type 2, morbid obesity, post-traumatic stress disorder, depression, alcohol dependence in remission, Sjogren's syndrome and hypertension (id.).

Although Dr. Helgason was plaintiff's treating physician, the ALJ did not give controlling weight to his opinions (see Tr. 22). The ALJ did not indicate specifically how much weight was given to Dr. Helgason's opinions, but did indicate that she was giving "greater weight" to the opinions of the non-treating, examining doctor, Dr. Kimberly Webster, M.D. ("Dr. Webster") because the ALJ concluded that Dr. Webster's opinions were "more objective" (id.; see also Tr. 23, 316-21). This determination by the ALJ is not supported by substantial evidence in the record as a whole.

The ALJ discredited the opinions by Dr. Helgason in part because plaintiff indicated that she could stand for three hours a day and walk for thirty minutes (Tr. 22). The ALJ found that Dr. Helgason's limitations exceeded plaintiff's allegations (id.). First, the Court notes that plaintiff's allegation that she could walk for thirty minutes was similar to Dr. Helgason's opinion that she was limited to walking zero to one hour (see

Tr. 1331). Secondly, the Court observes that plaintiff initially responded to the question about her ability to stand with the response of "maybe 15 to 20 minutes" (Tr. 44). The ALJ asked the question again, requesting the "total amount," and plaintiff asked "per day?" (id.). The ALJ specified "In an eight-hour day, how long, altogether, could you stand?" (id.). Plaintiff responded "maybe three hours" (id.). The Court notes that the ALJ simply asked plaintiff how much she could stand in an eight-hour day, while Dr. Helgason indicated that his limitations on plaintiff's ability to stand were assessed in the context of plaintiff's being "placed in a normal COMPETITIVE FIVE DAY A WEEK WORK ENVIRONMENT ON A SUSTAINED BASIS" (Tr. 1331 (emphasis in original)). Plaintiff was not asked how much she could stand under these circumstances. Therefore, this reason does not provide much support for the ALJ's decision to fail to give Dr. Helgason's opinion controlling weight and does not support the ALJ's conclusion that Dr. Helgason's opinion was less objective than that provided by Dr. Webster.

The only other reason given by the ALJ for rejecting or failing to give Dr. Helgason's opinion controlling weight was that Dr. Helgason opined that sometimes plaintiff would need to take unscheduled ten minute breaks to rest at unpredictable intervals during an eight-hour work day "every 30 minutes" (Tr. 1334). The ALJ found that this opinion was inconsistent with the fact that plaintiff did not demonstrate this need during her hearing and that this limitation was not supported by plaintiff's daily activities (Tr. 22). First, the ALJ did not specify which activity of daily living contradicted this opinion by Dr. Helgason. In addition, the activities of daily living referenced elsewhere

by the ALJ included "some work, vacuuming, shopping, walks, travel to New York in 2008, going to bingo games, using a computer, doing laundry and taking the bus" (Tr. 23). None of these activities demonstrates that plaintiff was able to maintain an eight-hour workday without sometimes taking an unscheduled break of ten minutes every thirty minutes.

Regarding the ALJ's assessment that plaintiff did not demonstrate this need during her hearing, the Court first notes that plaintiff's hearing was not an eight-hour workday in a competitive environment on a sustained basis. In addition, as noted by the Ninth Circuit, the "sit and squirm" jurisprudence "has been condemned." Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985) (citation omitted). The denial of Social Security benefits cannot be based on an ALJ's observations that a claimant sat comfortably at an administrative hearing when the claimant's statements to the contrary are supported by substantial evidence. Id. (citation omitted).

Here, the opinion by Dr. Helgason that sometimes plaintiff would need to take unscheduled ten minute breaks to rest at unpredictable intervals during an eight-hour work day "every 30 minutes" is supported by substantial evidence in the record. Therefore, this factor does not provide much support for the ALJ's failure to give Dr. Helgason's controlling weight or to give "greater weight" to the opinions of the non-treating, examining doctor, Dr. Webster (see Tr. 23).

Although it is true that Dr. Helgason's opinion differs in some respects from the opinions of Dr. Webster and some non-treating, non-examining physicians or psychologists, this fact merely demonstrates that Dr. Helgason's opinion was not

uncontradicted. Even if a treating physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31. Based on the relevant record, the Court concludes that the ALJ did not provide specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Helgason's opinions here.

The opinion by Dr. Webster relied on by the ALJ appears to be based on the lack of objective evidence to support plaintiff's limitations (see Tr. 320-21). Once a claimant produces medical evidence of an underlying impairment, however, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell, supra, 947 F.2d at 343, 346-47. Here, the ALJ improperly did not credit fully plaintiff's testimony regarding her pain symptoms and resulting limitations, as discussed above, see supra, section 1.

In addition, the ALJ appears to have failed to consider plaintiff's self-described symptoms when assessing the medical evidence and when making the determination to not credit fully Dr. Helgason's opinion. However, as stated by the Ninth Circuit, "sheer disbelief is no substitute for substantial evidence." Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004). This situation presented in this matter is similar to the situation presented to the Ninth Circuit in Benecke. See id. In that case, the Ninth Circuit included the following discussion:

> [T]he ALJ erred in discounting the opinions of [the claimant]'s treating physicians, relying on his disbelief of [the claimant]'s symptom testimony as well as his misunderstanding of fibromyalgia. The ALJ

erred by 'effectively requiring 'objective' evidence for a disease that eludes such measurement.' <u>Green-Younger v. Barnhart</u>, 335 F.3d 99, 108 (2d Cir. 2003) (reversing and remanding for an award of benefits where the claimant was disabled by fibromyalgia). Every rheumatologist who treated [the claimant] . . . . diagnosed her with fibromyalgia. [The claimant] consistently reported severe fibromyalgia symptoms both before and after diagnosis, and much of her medical record substantially pre-dates her disability application. Sheer disbelief is no substitute for substantial evidence.

<u>Id</u>.

In <u>Benecke</u>, the Ninth Circuit credited the evidence provided by the claimant and by her treating physicians as true because "the ALJ failed to provide legally sufficient reasons for rejecting [the claimant]'s testimony and her treating physicians' opinions." <u>Id.</u> (citations omitted). Here, as in <u>Benecke</u>, the ALJ likewise failed to provide legally sufficient reasons for rejecting plaintiff's testimony and legally sufficient reasons for failing to give controlling weight to the opinion by her treating physician, Dr. Helgason. <u>See</u> <u>id.</u>; <u>see also</u> <u>supra</u>, sections 1 and 2. In addition, here, as in <u>Benecke</u>, plaintiff's rheumatologist consistently diagnosed plaintiff with fibromyalgia (Tr. 405, 417, 593). Although plaintiff's symptoms here only pre-dated her disability onset date by approximately a year, here, as in <u>Benecke</u>, plaintiff consistently sought treatment for pain, as discussed above, <u>see</u> <u>supra</u>, BACKGROUND 9245 (<u>see also</u>, <u>e.g.</u>, Tr. 232, 245, 415; <u>see also</u>, <u>generally</u>, Tr. 734-1206). The Court concludes that this matter should be remanded so that the ALJ can reassess the evidence provided by plaintiff and the opinion evidence offered by Dr. Helgason in light of the deference that is supposed to be given to treating physicians according to the relevant federal regulations and Ninth Circuit case

law. See Benecke, supra, 379 F.3d at 594; Edlund, supra, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14; 20 C.F.R. §§ 404.1527(d)(2), 416.902.

According to the Ninth Circuit and the relevant federal regulations, a "treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." Edlund, supra, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14; 20 C.F.R. § 404.1527(d)(2); see also 20 C.F.R. § 416.902. Therefore, following remand, the ALJ assigned to this matter must determine if Dr. Helgason's opinion is well supported and not inconsistent with the other substantial evidence in the case record. The difficulty of this determination in this context was well described by the Seventh Circuit:

> There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and - - the only symptoms that discriminates between it and other diseases of a rheumatic character - - multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch. There is no serious doubt that [the claimant] is afflicted with the disease but it is difficult to determine the severity of her condition because of the unavailability of objective clinical tests.

Sarchet, supra, 78 F.3d at 306-07. Because of these difficulties, it is especially important for the ALJ assigned to this matter following remand to credit appropriately the judgment of the medical professionals and rheumatologists.

Although at this time fibromyalgia cannot be diagnosed with certainty with a particular test, based on a review of the relevant record, the Court notes that all of Dr. Helgason's opinions and assigned functional limitations may be well supported and not inconsistent with substantial evidence in the record as a whole. The ALJ assigned to this matter following remand should consider and address these facts if the determination is made not to give controlling weight to Dr. Helgason's opinions.

3.  This matter should not be remanded for a direction of an award of benefits.

Generally, when the Social Security Administration does not determine a claimant's applications properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Benecke, supra, 379 F.3d at 595 (citations omitted). The Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." Harman, supra, 211 F.3d at 1178. It is appropriate where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, 211 F.3d at 1178 (quoting Smolen, supra, 80 F.3d at 1292). Here, the Court already has determined that ALJ Lazuran failed to provide legally sufficient reasons for rejecting the evidence provided by plaintiff's testimony and the opinion evidence provided by plaintiff's treating physician, Dr. Helgason, see supra, sections 1 and 2.

However, here, outstanding issues must be resolved. See Smolen, 80 F.3d at 1292. There is a large volume of medical and other evidence and much of it is contradicted.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999) (quoting Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (citing Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980))). Here, as noted previously, some of Dr. Helgason's opinions are contradicted, see supra, section 2.

Therefore, remand is appropriate to allow the Administration the opportunity to consider properly all of the medical evidence as a whole and also to consider properly plaintiff's testimony. The ALJ assigned to this matter following remand should incorporate the properly considered medical evidence and the properly considered testimony by plaintiff into the consideration of plaintiff's residual functional capacity. See Sample, 694 F.2d at 642.

CONCLUSION

The ALJ in this matter did not evaluate properly plaintiff's credibility and testimony or the medical evidence.

Based on these reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

405(g) to the Administration for further consideration. **JUDGMENT** should be for plaintiff and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  <u>See also</u> Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. <u>See</u> 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on October 28, 2011, as noted in the caption.

Dated this 5th day of October, 2011.

J. Richard Creatura
United States Magistrate Judge